**SANITATION EQUIPMENT LIMITED; Century Tool and Manufacturing Co., Plaintiffs,**

v.

**THETFORD CORPORATION, Defendant.**

No. 83 C 3221.

United States District Court, N.D. Illinois, E.D.

Feb. 25, 1987.

Charles A. Laff, Martin L. Stern, Laff, Whitesel, Conte & Saret, Chicago, Ill., for plaintiffs.

Bradley Hulbert, D. Dennis Allegretti, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., James Wynne, Frank B. Vecchio, Stern, Milmet, Vecchio, Goll & Carnago, Detroit, Mich., George L. Boller, Stephenson & Boller, Ann Arbor, Mich., for defendant.

MEMORANDUM OPINION
AND ORDER

BRIAN BARNETT DUFF, District Judge.

Plaintiffs move for summary judgment on their claim that defendant's U.S. Patent No. 4,192,027 ("the '027 patent") is invalid and unenforceable. Plaintiffs make three assertions: that the patent is unenforceable in its entirety because defendant procured it by inequitable conduct; that Claims 1, 2, and 4 are invalid because they replicate prior art; and that the remaining claims (3 and 5–9) are invalid for obviousness.

The '027 patent's only independent claim is Claim 1. Because the other claims—as well as plaintiffs' inequitable conduct argument—stand or fall with Claim 1, the court examines that claim first.

I. *Claim 1*

Claim 1 of the '027 patent reads as follows:

1. A toilet comprising, in combination:

(a) a bowl having an outlet port;

(b) a valve member moveable between a first position under said outlet port, in which it closes said outlet port, and

a second position in which it uncovers the outlet port;

(c) an actuation member carrying said valve member and moveable relative to said valve member; and

(d) cooperating cam surfaces on said actuation member and valve member whereby relative movement between the actuation member and the valve member, when the latter is moved into its first position by the former, urges the valve member in an upward direction to seal the outlet port.

Plaintiffs contend that Claim 1 is unenforceable for two reasons: first, their Passport Model 470 ("Passport") portable toilet, which was sold in the United States more than one year before plaintiffs applied for the '027 patent, contains every element of Claim 1; second, U.S. Patent No. 989,201, issued in 1911 to Snow ("the Snow patent") discloses every element of Claim 1 except a toilet bowl, and the addition of a toilet bowl to the Snow design is obvious. The court considers each argument in turn.

### A. *Passport*

The parties agree that the Passport, like the toilet that Claim 1 describes, has a bowl with an outlet port, a moveable valve that closes and opens the outlet port, and an "actuator" that moves relative to the valve and also causes the valve to move between the open and closed positions. They disagree, however, on two matters: whether the actuator in the Passport "carries" the moveable valve, as the '027 patent requires; and whether the Passport uses cooperating cam surfaces to help seal the outlet port, as is the case in the '027 design.

In arguing that the Passport's actuator does not "carry" the valve, defendant points to a series of diagrams that illustrate the operation of the Passport's valve. As those diagrams (reproduced below) show, the Passport's valve is a convex flap that either hangs down, leaving the outlet port open (as in Fig. 3), or is horizontal, pushing upwards against the outlet port and closing it (as in Fig. 1). The position of the actuator, which is a rod with a bulbous

end that can lodge in a concavity underneath the valve, determines the valve's position.

Fig. 1

Fig. 2

Fig. 3

When the actuator is pushed in, as in Figure 1, the bulb of the actuator engages the concavity directly below the center of the valve and holds the valve firmly against the outlet port. As the user withdraws the actuator (see Figure 2), its bulb disengages from the concavity and slides out from under the valve, leaving it unsupported. Without support, the valve flops down to the position shown in Figure 3, attached to the top wall of the valve assembly housing by a hinge above the actuator (not visible in the diagram). When the actuator returns to its original position after flushing, the end of the actuator flips the valve back up to the closed position.

Defendant argues that the Passport's actuator does not "carry" the valve because it merely flips it from one position to another. When it used "carry" in the '027 application, defendant asserts, it meant the term in a narrow sense in which the valve rides on top of the actuator, sliding under or away from the outlet port together with

the actuator—as is the case with the valve in the portable toilets that defendant markets under protection of the '027 patent.

█ While this narrow claim may be what defendant now wants, it is not the claim that defendant applied for and received. An axiom of patent law is that patent holders may not procure broad claims and then fend off legal challenges by implying the existence of limiting features nowhere to be found in the text of the patent. *Environmental Designs, Ltd. v. Union Oil Co. of California,* 713 F.2d 693, 699 (Fed.Cir.1983).

█ The ordinary English definition of "carrying" is broad enough to encompass the relationship between the Passport's actuator and valve. "Carry" means "move while supporting." *Webster's Third New International Dictionary* 343 (1971). The Passport's actuator does carry the valve, because pushing the actuator in to close the valve causes the end of the actuator to slide underneath the valve, lifting it from a vertical to a horizontal position. The actuator thus moves the valve upward while supporting it.

Defendant also argues that the Passport does not anticipate the '027 patent because it lacks the "cooperating cam surfaces" that element (d) of Claim 1 requires. The '027 patent describes these cooperating cam surfaces as a pair of inclined planes on the lower surface of the valve. As the actuator slides over these surfaces in the process of carrying the valve to the closed position, the gradient causes increasing upward pressure on the valve, resulting in a tight seal.

The Passport has no such cam surfaces. Plaintiffs suggest that the bulbous end of the Passport's actuator and the far end of the valve flap constitute cam surfaces (see Fig. 4), but these two surfaces never touch one another and plaintiffs do not explain how they resemble the cooperating cam surfaces of the '027 design. Because the Passport thus lacks a central element of Claim 1, plaintiffs cannot show that the Passport anticipates Claim 1 of the '027 patent.

Fig. 4

## B. *The Snow Patent*

Plaintiffs argue that even if the Passport does not anticipate Claim 1 of the '027 patent, Claim 1 is unenforceable because it is obvious in view of the Snow patent, which describes a manually operated watertight valve. (See Fig. 5).

As the user turns the handle (18), a long screw-type actuator (14) moves a round plate (13) across an opening or outlet hole in a sheet (4). Lateral motion of the plate stops once the plate is directly opposite the hole. Continued rotation of the handle causes a slide block (10) connected to the end of the actuator to ride up on a cooperating slide block (12) that forms part of the plate, pushing the plate closer to the hole and forming a tighter seal.

Fig. 5

The Snow patent has all the elements of Claim 1 with the exception of a toilet bowl: it has an outlet port, a valve moveable between one position in which it closes the port and another in which it opens the port; an actuator carrying the valve and moveable relative to it; and cooperating cam surfaces on the actuator and valve surface

that work together to push the valve tight against the outlet port.

Defendant argues that this valve design is not similar to the design described in Claim 1 of the '027 patent, and that even if the designs are similar, it would not be obvious to a person with ordinary skill in the "art" of designing portable toilets to combine the Snow valve with a toilet bowl.

The purported differences between the Snow valve and the valve described in the '027 patent are chimerical. Defendant's own expert admitted during his deposition that a person skilled in the art could make the Snow valve work horizontally, as would be required in a portable toilet; that the Snow valve could be reduced in size and weight to operate inside a portable toilet; and that the relationship of the actuator and valve in the two designs is essentially equivalent. All the evidence in the record indicates that the Snow valve is very similar in design to the '027 valve, and that an artisan with ordinary skill could have adapted the Snow valve for use in portable toilets.

█ Defendant's assertion that it is not obvious to combine the Snow valve with a toilet bowl bears no greater scrutiny. The combination of toilet bowls with outlet valves is a fact of life in the portable toilet industry, and as defendant's expert testified, engineers in the industry routinely review advances in the design of many types of watertight valves, looking for ideas applicable to portable toilets. Because it thus was obvious to examine the Snow design with a view toward its use in portable toilets, and because a person with ordinary skill in the art could have adapted the Snow valve for that purpose, Claim 1 of the '027 is unenforceable for obviousness in view of the Snow patent.

## II. *Claims 2 and 4*

Claim 2 reads:

2. A toilet as claimed in claim 1, wherein at least one of said cam surfaces is provided on the lower face of the valve member.

Claim 4 reads:

4. A toilet as claimed in claim 1, wherein in operation of the actuation member firstly moves the cam surfaces to release the valve member toward its open position.

Defendant appropriately does not argue that it is possible to find Claims 2 and 4 enforceable if Claim 1 is found unenforceable. Claims 2 and 4 make only minor refinements in the valve structure described in Claim 1, and both refinements also are present in the Snow design. Claims 2 and 4 therefore are unenforceable for obviousness.

## III. *Claims 3 and 5–9*

Plaintiffs argue that these claims, which describe additional details of the valve structure set out in Claim 1, are unenforceable for obviousness because Claim 1 is obvious, and because they merely add features previously used in portable toilet or valve designs.

Defendant offers no response except to insist that Claim 1 is nonobvious and enforceable—a contention the court already has rejected. The court has examined Claims 3 and 5–9, and finds plaintiffs' arguments sound. There being no disputed issue of material fact, plaintiffs are entitled to summary judgment as to the unenforceability for obviousness of Claims 3 and 5–9.

## IV. *Inequitable Conduct*

█ Although the court's conclusion that all claims of the '027 patent are invalid for obviousness makes it unnecessary to address plaintiffs' alternative argument that the patent is unenforceable for inequitable conduct, the court does so for the sake of completeness. Plaintiffs seek a finding that the '027 patent is unenforceable in its entirety because defendant failed to disclose the existence of the Passport portable toilet when it applied for the '027 patent. Because the Passport lacked cooperable cam surfaces and thus did not directly anticipate the '027 patent, and because a find-

ing of inequitable conduct requires proof of a threshold level of intent, which ordinarily is not an appropriate issue for resolution on summary judgments, *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985), plaintiffs are not entitled to summary judgment as to the unenforceability of the '027 patent for inequitable conduct.

## CONCLUSION

Plaintiffs' motion for summary judgment is granted as to all claims of the '027 patent on the basis of obviousness. Plaintiffs are not entitled to summary judgment on the issue of inequitable conduct.

IT IS SO ORDERED.