**Edwin W. LEFFINGWELL, Plaintiff,**

**v.**

**SEARS, ROEBUCK AND CO.,
Defendant.**

**No. 88 C 4003.**

United States District Court,
N.D. Illinois, E.D.

Aug. 4, 1989.

Eric N. Macey, P. Andrew Fleming, Donald A. Tarkington, Karen L. Drizin, Novack and Macey, Chicago, Ill., for plaintiff.

Michael A. Stiegel, Adele Rapport, Paul E. Starkman, Arnstein, Gluck, Lehr & Milligan, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Edwin W. Leffingwell has sued defendant Sears, Roebuck & Co. under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. secs. 621 et seq., and Illinois common law. He alleges that from 1985 to late 1987 Sears discriminated against him by twice transferring him to inferior jobs and then by constructively firing him because of his age. Sears has moved to dismiss the allegations regarding the first two allegedly discriminatory acts on the grounds that they are barred by the statute of limitations. For the reasons set forth below, the motion will be denied.

## THE COMPLAINT

For the purposes of this motion, the court accepts as true the allegations in the complaint.[1] The plaintiff, an Illinois resident, is currently 58 years old. He began working for Sears in February, 1956, and by 1967 had attained the position of Senior Buyer. In the summer of 1985, Vern Page, a Sears vice-president, asked the plaintiff if he would consider a reassignment to a temporary position as Staff Coordinator for the Sears Store of the Future project. When the plaintiff expressed a fear that such a reassignment would forfeit the tenure and responsibilities he had acquired as Senior Buyer, Page assured him that the new position would enhance his opportunities for promotion, and that he could return to his position as Senior Buyer when his temporary position terminated. Based on these representations, the plaintiff accepted the new position. As had been the case when he was a Senior Buyer, the plaintiff performed his new job in an exemplary fashion.

In the summer of 1986, Sears terminated the plaintiff's Staff Coordinator position. When the plaintiff requested that he return to his job as Senior Buyer, however, David Stewart, Page's successor, rejected the request and urged the plaintiff to voluntarily retire. The plaintiff refused.

Sears then assigned the plaintiff to an inferior job assignment as a Group Coordinator of the Quick Response Project. Sears also embarked on a campaign to degrade and humiliate the plaintiff by physically segregating him from his colleagues and by excluding him from important decisions and responsibilities. The plaintiff continued to request that Sears return him to Senior Buyer, but Sears chose instead to fill available Senior Buyer positions with younger employees.

In late October, 1987, Sears terminated the plaintiff's position as Group Coordinator and told him that he would have to accept an inferior position, that of marketing planning director. The plaintiff refused to accept this assignment, insisting that it involved an unacceptable loss of salary, benefits, and responsibility. Sears then gave the plaintiff an ultimatum: either become marketing planning coordinator, or leave. On December 2, 1987, the plaintiff chose the latter, and on January 25, 1988, he filed a charge of employment

---

1. In its brief, Sears has relied on facts outside the pleadings. It justifies this tactic by citing *Miller v. Advanced Studies, Inc.*, 635 F.Supp. 1196 (N.D.Ill.1986), for the proposition that a defendant may rely on such extrinsic evidence when seeking dismissal on timeliness grounds under Rule 12(b)(6). *Miller* said no such thing. In that case, both sides had provided evidence in support of their arguments. The court noted that it could not consider this evidence in ruling on the Rule 12(b)(6) motion, but that it could consider it after converting the motion to a Rule 56 summary judgment motion pursuant to Rule 12(b). *Id.* at 1198. Far from supporting Sears' position, *Miller* directly contradicts it: Whatever the basis for a Rule 12(b)(6) motion, the court "may consider only the factual allegations of the complaint." *Id.* Arguing otherwise is not only frivolous, but is also an odd way to seek the confidence of the court.

discrimination with the Equal Employment Opportunity Commission. After the EEOC declined to pursue his charge, the plaintiff filed this lawsuit.

Count I alleges that, through its actions, Sears constructively discharged the plaintiff, and that in doing so it discriminated against him because of his age. Counts II and III, claims not at issue here, allege that Sears' conduct also violated Illinois common law. Sears has moved to dismiss a portion of Count I on the grounds that it is barred by the ADEA statute of limitations.

## DISCUSSION

Before a plaintiff may pursue judicial relief under the ADEA (or its brother, Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq.), he first must file a timely charge of discrimination with the EEOC. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–93, 102 S.Ct. 1127, 1131–32, 71 L.Ed.2d 234 (1982) (Title VII); *Steffen v. Meridian Life Insurance, Co.*, 859 F.2d 534, 541–42 (7th Cir.1988) (ADEA). If he does so, then he may file suit in court after giving the EEOC 60 days to act on the charge. 29 U.S.C. sec. 626(d). If he does not, then his judicial avenues will be time-barred. 29 U.S.C. sec. 626(d)(2) provides a 300–day limitations period for plaintiffs living in deferral states, such as Illinois.

Sears concedes that the plaintiff has a timely claim of age discrimination for his alleged constructive discharge in December 1987. Nevertheless, Sears has moved to dismiss those allegations in Count I which are predicated on the plaintiff's transfer to Staff Coordinator in 1985 and to Group Coordinator in 1986. According to Sears, the 300–day limitations period renders these allegations untimely since the plaintiff did not bring his EEOC charge until January, 1988.

The Supreme Court has held that, as a general rule, a plaintiff may not bring suit under the ADEA for discriminatory acts falling outside the limitations period, even if the effects of those acts continue into the limitations period. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Thus, when a plaintiff allegedly was denied tenure as a college professor for discriminatory reasons, and this denial meant that he would be discharged from his position the following year, the limitations period for him to file a charge began to run from the date of the tenure denial, not the date he finally lost his job. *See id.* at 258, 101 S.Ct. at 504.

On the other hand, a plaintiff who suffers an act of discrimination but fails to bring a timely EEOC charge, and then suffers another discrete act of discrimination, may challenge the new act of discrimination by filing a charge within the limitations period. *Caldwell v. National Association of Home Builders*, 771 F.2d 1051, 1057 (7th Cir.1985). Thus, for example, had the plaintiff in *Ricks* alleged that "the manner in which his employment was terminated differed discriminatorily from the manner in which the college terminated other professors who has also been denied tenure," then his discriminatory discharge claim would have been timely. *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504. Furthermore, evidence regarding allegedly discriminatory acts occurring outside the limitations period may be admissible in suits predicated on discrimination within the limitations period. *Caldwell v. National Association of Home Builders*, 771 F.2d at 1057; *see United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

This framework clearly defeats Sears' motion. A fair reading of the complaint suggests that the plaintiff seeks recovery only for the discriminatory constructive discharge of December, 1987, and that the allegations regarding his 1985 and 1986 demotion serve merely as evidentiary backdrops to this claim. (For example, his prayer for relief requests backpay only for benefits lost after December 2, 1987, not for any benefits he lost as a result of his earlier demotions). If so, then Sears has no basis for seeking dismissal of the allegations regarding the transfers: Rule 12(b)(6) provides for the dismissal of claims, not allegations; and although Rule 12(f) authorizes motions to strike "redundant, immate-

rial, impertinent or scandalous" allegations, the timely claim makes relevant Sears' allegedly discriminatory acts which occurred outside the limitations period. *See Patton v. University of Chicago Hospitals,* 706 F.Supp. 627, 629 (N.D.Ill.1989).

The discussion, of course, could end here. Since this construction of the complaint would defeat Sears' motion, and since, on Rule 12(b) motions, courts must construe complaints in the light most favorable to the plaintiff, the defendant cannot obtain dismissal of Count I. Yet, the plaintiff's briefs in opposition to the motion indicate that this construction of the complaint may not be what he had in mind, and thus require some additional commentary to clarify this court's ruling.

The gravaman of Sears' motion is that the plaintiff's allegations regarding the 1985 and 1986 transfers represent more than mere evidentiary background; instead, Sears argues, the plaintiff is seeking to recover on the basis of these allegedly discriminatory acts. As noted above, the complaint need not be read that way. Yet, the plaintiff, in addition to defending his pleading under the analysis presented above, also insists that he may predicate claims on the earlier acts despite their occurrence more than 300 days before he filed his EEOC charge. The plaintiff posits two theories justifying this position.

### 1. *The Continuing Violation Theory*

According to the plaintiff, the fact that the 1985 and 1986 transfers were part of a continuing pattern of discrimination against him means that the limitation period does not apply to them. He is mistaken.

■ To be sure, under the so-called continuing violation doctrine, a plaintiff may sue an employer whose discrimination against him began outside the limitations period so long as the employer has continued his discriminatory policies or practices into the limitation period. *See Torres v. Wisconsin Department of Health & Social Services,* 838 F.2d 944 (7th Cir.1988). This is so, however, not because the con-

tinuing violation serves as some talismanic device which resurrects stale claims, but rather because the existence of a continuing violation means that some discriminatory acts, not merely the present consequences of those acts, have occurred within the limitations period. *Mack v. Great Atlantic and Pacific Tea Company, Inc.,* 871 F.2d 179, 183 (1st Cir.1989); *see Lorance v. AT & T Technologies, Inc.,* — U.S. —, 109 S.Ct. 2261, 2269 n. 5, 104, L.Ed.2d 961 (1989); *Roberts v. North American Rockwell Corp.,* 650 F.2d 823, 827 (6th Cir.1981). In order to establish a continuing violation, and thus to recover, the plaintiff must prove discrimination within the limitations period. *Stewart v. CPC International, Inc.,* 679 F.2d 117, 121–22 (7th Cir.1982).

The plaintiff in this case, then, will have to prove that Sears discriminated against him within 300 days of his EEOC charge. He may do so by showing, through the prima facie case method, that Sears forced him to take the market planning coordinator position because of his age. *See* 29 U.S.C. sec. 623(a)(1). Even if he cannot so prove, he may prevail if he can establish that Sears' alleged pattern of harassing him became so extreme as to violate the terms and conditions of his employment. *See* 29 U.S.C. secs. 623(a)(1); *cf. Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Under either approach, the plaintiff may be able to rely on his 1985 and 1986 demotions as evidencing Sears' discriminatory motive.[2] *See Waltman v. International Paper Co.,* 875 F.2d 468, 474–75 (5th Cir.1989). The plaintiff will not prevail, however, merely by proving that some act or statement, insufficient in itself to give rise to an ADEA claim, occurred within the limitations period, and by then bootstrapping onto it now-untimely claims that the earlier transfers violated his ADEA rights.

### 2. *The Temporary Assignment Theory*

The plaintiff next suggests that claims predicated on his 1985 and 1986 transfers are timely because Sears treated the Staff Coordinator and Group Coordinator assign-

---

**2.** Of course, this court has no intention at this time of addressing evidentiary issues that will arise at trial. Whether the plaintiff actually will

be able to demonstrate the admissibility of alleged past acts of discrimination is a question best left for future resolution.

ments as temporary. Again, the plaintiff is incorrect.

Of course, an employer may not avoid the ramifications of its discrimination by "temporarily" assigning an employee to another position, filling the employee's old position with a youngster, waiting 301 days, and then informing the employee that he cannot have his old job back. In this situation, the employee's transfer, and the youngster's replacement of him, occur when the employer informs the employee that the "temporary" reassignment is a permanent one; the plaintiff has 300 days from this date to file his charge. *See Ricks*, 449 U.S. at 259, 101 S.Ct. at 504 (limitations period commences to run when the decision is made and the plaintiff is notified); *Dugan v. Ball State University*, 815 F.2d 1132 at 1134 (7th Cir.1987).

According to the complaint, Sears informed the plaintiff that his position as Staff Coordinator would be temporary, and that he could have his Senior Buyer position back at any time. If so, then Sears cannot rely on the date of this assignment as starting the limitations clock. The complaint, however, proceeds to allege that the plaintiff, when this temporary assignment ended, demanded return to his Senior Buyer position, but that Sears, without further promises of a future return to this position, refused. At this point, the plaintiff's termination from his Senior Buyer position matured. Because this occurred more than 300 days before the plaintiff filed his EEOC charge, the plaintiff may not pursue a claim predicated on it. *See Malik v. Trustees of Indiana University*, 49 FEP Cases 561, 563–64, 1989 WL 77179 (S.D.I. 1989). With these clarifications, the court will deny Sears' motion to dismiss.[3]

## CONCLUSION

The motion to dismiss is denied.

---

**3.** For reasons this court cannot fathom, Sears chose to bring this motion nearly a year into this case, and after it had filed a motion for summary judgment. Hopefully, the court's ruling will not impact on the summary judgment motion. If it does, the court will assess sanctions against Sears for any additional briefing necessitated by its dallying.