UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JACKSON LEE MARTIN,
                    *Plaintiff-Appellee,*

v.                                                    No. 01-1105

MANNA PRO CORPORATION,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-00-292-2)

Argued: September 25, 2001

Decided: October 16, 2001

Before MOTZ and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Christie Sue Utt, RANSON LAW OFFICES, Charleston,
West Virginia, for Appellant. Erin Magee Condaras, JACKSON &
KELLY, P.L.L.C., Charleston, West Virginia, for Appellee. **ON
BRIEF:** J. Michael Ranson, RANSON LAW OFFICES, Charleston,
West Virginia, for Appellant. Charles M. Surber, Jr., JACKSON &
KELLY, P.L.L.C., Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

In this diversity action, Jackson Lee Martin alleges employment discrimination on the basis of age in violation of the West Virginia Human Rights Act, W. Va. Code § 5-11-1 (1999). The district court granted summary judgment to his former employer. We affirm.

I.

Martin began his employment with Manna Pro Corporation or one of its predecessors (collectively, "Manna Pro") in 1979 and, over time, advanced to the position of territory sales manager. Manna Pro, which manufactures agricultural products, employs several hundred persons. Martin serviced accounts for feed dealer clients located throughout West Virginia, southern Virginia, eastern Kentucky, and parts of Ohio.

In October 1998, when Martin was 55 years old, his supervisor informed him that he was being laid off because Manna Pro had decided to close Martin's sales territory and rely instead on telemarketing to serve its clients within that territory. Manna Pro presented Martin with a "Layoff and General Release Agreement," which provided that, effective November 15, 1998, Martin would "be laid off from his current position and as an employee of Manna Pro in any other capacity." The agreement also provided that Martin would receive four months' severance pay and would waive and release all age discrimination claims against Manna Pro, arising on or before the date of execution of the agreement. The company advised Martin to consult with an attorney before entering into the agreement.

Two weeks later, after consulting with an attorney, Martin informed the company that he "ha[d] been told" that the agreement did not comply with state or federal law and that his age and nineteen

years of service to the company were "strong indicators of possible age discrimination." Nonetheless, Martin stated that he "would like to sign" the agreement if "we can agree on an acceptable severance payment"; he asked for one year's severance pay. After negotiations, Martin and Manna Pro compromised on six months' severance pay, and Martin signed the agreement, as so revised, on January 14, 1999. In compliance with the agreement, Manna Pro paid Martin severance of approximately $11,500, less necessary withholdings. After leaving Manna Pro, Martin never again spoke to his supervisor or contacted anyone at Manna Pro about returning to work.

In April 1999, Manna Pro hired 34-year-old Scott Trimble as a territory sales manager in Ohio; included within Trimble's territory was much of Martin's former territory — the West Virginia and Ohio regions and part of Martin's Kentucky region. Manna Pro assigned a territory manager in Pennsylvania to Martin's Virginia region.

When Martin learned that Trimble had been hired and was serving clients in his former territory, Martin filed this action alleging unlawful age discrimination under the West Virginia Human Rights Act. W. Va. Code Ann. § 5-11-9 (Michie 2000). The district court granted summary judgment to Manna Pro, holding that Martin could not prove the second element of his *prima facie* case, namely that he applied for the position at issue.

## II.

We analyze an age discrimination claim premised on the West Virginia Human Rights Act in the same manner as that set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 159-60 (W. Va. 1995).

Thus, to establish a *prima facie* case, Martin must prove: (1) that he is in the protected class, i.e., over 40 years of age; (2) that he applied for the position in question; (3) that he was qualified for the position; and (4) that he was rejected for the position under circumstances giving rise to an inference of discrimination. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998); *accord McDonnell Douglas*, 411 U.S. at 802. The district court held that Martin failed to

establish the second element — that he applied for the position — and for this reason failed to prove a *prima facie* case.* We note at the outset that no collective bargaining agreement governed Martin's employment, let alone provided recall rights to him, nor does the January release-severance agreement, or any written company policy, or any company handbook provide such rights. Moreover, Martin admitted that no one at Manna Pro "actually ever told" him that he would be recalled or that he had a right to be recalled; he "just assumed" it. J.A. 59.

Nevertheless, Martin maintains that the "futile gesture" doctrine excuses him from applying for the position filled by Trimble. Under this doctrine, a plaintiff need not show he applied for a position if he can demonstrate that "he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied." *Brown*, 159 F.3d at 902 (quoting *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990)); *cf. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture, he is as much a victim of discrimination as is he who goes through the motions of submitting an application."). As the district court held, however, Martin cannot avail himself of the futile gesture doctrine because he does not allege that he had any reason to believe that, had he applied, he would have been rejected. Therefore, no discrimination *prevented* him from applying for the position in question with Manna Pro.

Alternatively, Martin contends that he did not need to prove that he applied for this position because "Manna Pro had a practice of . . . seeking out former employees and calling them back to work." Brief of Appellant at 21. *See Box v. A & P Tea Co.*, 772 F.2d 1372, 1376-

---

*Martin's failure to recall claim is not barred by his release and waiver under the agreement because a failure to recall can be an adverse employment action that accrues separate from the initial adverse employment action, the layoff. *See Lawson v. Burlington Indus., Inc.*, 683 F.2d 862 (4th Cir. 1982) (claim alleging discriminatory layoff did not include and was distinguishable from claim of discriminatory "failure to recall or rehire").

77 (7th Cir. 1985) ("When an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the *prima facie* case is loosened somewhat" and an employee can establish a *prima facie* case "by showing that, had she known of an . . . opening, she would have applied."). The record, however, does not bear out this contention. The only evidence that Martin offers demonstrating such a practice is his supervisor's decision to rehire a single former employee, upon recommendation of a company customer, and another supervisor's decision to rehire another former employee in a different part of the country. Two examples in a company that employs hundreds of people hardly demonstrate a company practice. Moreover, neither of these rehired employees had signed a release and received severance pay. Indeed, the record contains uncontroverted evidence that Manna Pro had never recalled employees who had signed such "lay off releases."

For these reasons, the district court's order granting summary judgment to Manna Pro is

*AFFIRMED.*